**J. Carleton BOWLING, Petitioner,**

v.

**KENTUCKY BAR ASSOCIATION,
Respondent.**

**No. 1999–SC–0306–KB.**

Supreme Court of Kentucky.

Sept. 27, 2001.

**161**

## OPINION AND ORDER

Applicant, J. Carleton Bowling, formerly of Maysville, was suspended from the practice of law for nine months by order of this Court dated July 23, 1998. *Bowling v. KBA*, Ky., 971 S.W.2d 294 (1998). Bowling has filed an application for reinstatement pursuant to SCR 3.510. The Board of Governors has recommended that Bowling's application be denied. For the fol-

lowing reasons, we grant Bowling's application to the extent that he is granted conditional reinstatement to the practice of law in the Commonwealth of Kentucky.

Bowling's suspension resulted from his August 1997 *Alford* plea in the Mason District Court to one count of fourth-degree assault, four counts of terroristic threatening, two counts of unlawful imprisonment, and one count of second-degree wanton endangerment. All acts were committed against his former wife, Sandra. As part of his plea agreement on the criminal charges, Bowling agreed to: (1) leave Kentucky; (2) have no contact with Sandra; (3) relinquish all of his firearms; and (4) obtain psychological counseling "on a schedule to be determined by a licensed psychologist or psychiatrist to be not less often than one meeting per month." Appellant was sentenced to a year in jail, with credit for the forty days served, the remainder probated for two years. Thereafter, Bowling moved to North Carolina where his first ex-wife and his daughter lived.

On March 31, 1999, Bowling filed an application for reinstatement. The Character and Fitness Committee conducted an extensive evidentiary hearing on August 9 and September 7, 2000. The evidence presented at the hearing was certainly controverted. Bowling acknowledged the seriousness of his misconduct and expressed remorse for such conduct. He introduced testimony from several North Carolina coworkers who stated that he was a responsible and diligent employee. Further, Doug Jennette, the clinical social worker with whom Bowling met for a period of one year while in North Carolina, testified that Bowling had addressed many of the emotional problems that led to the incidents in question, and opined that he was probably capable of returning to the practice of law.

The KBA countered with the testimony of several attorneys from the Maysville area who expressed concern about Bowling's mental stability should he resume his practice in Maysville. In addition, the KBA argued that Bowling violated the terms of his plea agreement since he was ordered to see a psychologist or psychiatrist, and Jennette was only a clinical social worker. Bowling defended that his decision to see Jennette was based on the fact he could not afford the cost of a psychiatrist or psychologist, and that he, in fact, informed the trial court and Commonwealth's attorney when he began seeing Mr. Jennette. Moreover, monthly progress reports were filed with the trial court without objection. Although the court records do not reflect that approval was granted, Bowling's counsel obtained an order *nunc pro tunc* from the Mason District Court declaring that the counseling provided by Mr. Jennette constituted sufficient compliance.

Finally, Dr. Granacher, who evaluated Bowling on the Character and Fitness Committee's behalf, opined that Bowling has the mental capacity to resume the practice of law, and that medication he was taking at the time of the incident likely exacerbated his mental condition and attributed at least in part to his behavior. However, Dr. Granacher recommended that Bowling be conditionally reinstated and "that for at least five years, he be monitored by a psychologist or psychiatrist who can periodically report to the Office of Bar Admissions regarding Mr. Bowling's behavior or any problems therewith."

In its February 5, 2001 report, the Committee determined:

[W]ith the exception of concern about the potential pressures on re-entry into the legal profession that Mr. Bowling would encounter, the Committee finds that Mr. Bowling has shown by clear and convincing evidence that he is of good and moral character and that his readmission would not be a detriment to the legal profession. However, the Committee feels that it can find Mr. Bowling meets this critical component for reinstatement only if Mr. Bowling provides a statement that he is willing to enter into a "Conditional Agreement" with the Committee, in accordance with SCR 2.042, within thirty days of the date of issuance of this recommendation. The "Conditional Agreement" would contain the following provisions:

1. Mr. Bowling would provide the Committee with a formal monitoring plan prepared by a psychologist or psychiatrist within thirty days after a favorable Order by the Court restoring his membership.

2. Mr. Bowling would attend psychological counseling on a schedule to be determined by a licensed psychologist or psychiatrist and for the duration necessary, as determined by the licensed psychologist or psychiatrist but in no event would that period result in a monitoring of Mr. Bowling's stability for less than one year after being readmitted to the Bar.

3. Mr. Bowling would provide the Committee with proof of compliance with such plan in accordance with said agreement until such time as *the Committee* deems monitoring no longer necessary to protect public interest.

The case thereafter proceeded to the Board of Governors, which heard oral arguments and considered additional briefs filed by both parties. On March 28, 2001, the Board issued its recommendation. In voting unanimously to deny reinstatement, the Board concluded that "the applicant should not be readmitted to the practice of

law and furthermore that the rules of re-admission do not allow for a conditional reinstatement and it was therefore error for the Character and Fitness Committee to utilize SCR 2.042 as an avenue for read-mittance." Bowling subsequently filed a notice of review and brief with this Court on April 30, 2001.

When an attorney has been suspended from the practice of law, before reinstate-ment is warranted an inquiry is made to determine: (1) whether the attorney com-plied with the suspension order; (2) whether the attorney "presently possesses sufficient professional capabilities and qualifications" to practice law; and (3) whether the attorney is of "good moral character." SCR 3.510(2). The Character and Fitness Committee determined that Bowling complied with the order of sus-pension. He has paid the costs of his suspension proceedings and has not prac-ticed law during such time. Moreover, the Committee found that Bowling presently possesses sufficient professional capabili-ties and qualifications to practice law.

■ The final inquiry is whether Bowling is of "good moral character." The same standards which apply to reinstate-ment after disbarment apply to reinstate-ment after suspension. *In re Cohen,* Ky., 706 S.W.2d 832 (1986). An applicant for reinstatement to the practice of law bears the burden of demonstrating that he has "so rehabilitated himself that in spite of his past failings … he [has] become worthy of trust and confidence and would be a credit not a detriment to the profession of law." *In re Applewhite,* Ky., 401 S.W.2d 757 (1965).

■ "We 'must be cognizant of the re-sponsible position a lawyer occupies in the community.'" *Faust v. Kentucky Bar As-sociation,* Ky., 929 S.W.2d 185 (1996) (quoting *In re Cohen, supra,* at 834.) The Character and Fitness Committee, after hearing all of the testimony and reviewing the record, determined that Bowling has shown by clear and convincing evidence that he is of good and moral character and that his readmission would not be a detri-ment to the legal profession. However, since the Committee expressed concern about the potential pressures that Bowling would encounter upon re-entry into the profession, it recommended a conditional reinstatement pursuant to SCR 2.042.

■ The KBA and the Board of Gover-nors is correct that SCR 2.042 is not appli-cable to reinstatement cases. The lan-guage of the rule clearly indicates that as a part of the initial certification process, the Character and Fitness Committee can re-quire an applicant for admission to the bar to enter into a conditional agreement of admission. Nowhere in the rule are the terms readmission or reinstatement men-tioned. Nonetheless, although not specifi-cally authorized under the rules, this Court has granted conditional reinstatement in a number of cases. *Smith v. KBA,* Ky., 979 S.W.2d 111 (1998); *KBA v. Dunn,* Ky., 965 S.W.2d 158 (1998); *Faust v. KBA,* Ky., 929 S.W.2d 185 (1996); *KBA v. Rankin,* Ky., 862 S.W.2d 894 (1993). In both *Dunn* and *Rankin,* reinstatement was conditioned upon the offending attorneys attending Al-coholics Anonymous, to be supervised by a colleague who reported to the Committee. Here, the Committee has recommended that Bowling be monitored by a mental health professional who would report to the Committee.

Other than noting that SCR 2.042 does not apply to reinstatement proceedings, the Board of Governors expressed no grounds for denying Bowling's application for reinstatement. As such, we are per-suaded by the comprehensive report of the Character and Fitness Committee that Bowling has, in fact, met his burden for

reinstatement. The Character and Fitness Committee shall set forth the terms of the "Conditional Agreement" provided for in its Findings of Fact, Conclusions of Law and Recommendation, in a written agreement with Bowling. These terms and conditions shall be closely monitored by the Committee or its agents or designees. *Faust, supra.* Upon failure to comply with the terms and conditions of the agreement, the Committee may recommend to this Court: (1) an extension of the terms and additional conditions; or (2) revocation of license.

Accordingly, the application of J. Carleton Bowling to be reinstated to the practice of law is conditionally granted as set out above in this Opinion and Order.

All concur.

ENTERED: September 27, 2001.

/s/ Joseph E. Lambert
Chief Justice